## Ruckel v. Insurance Company of North America

*David G. Blake*, for defendant Insurance Company of North America.

*Steven L. Sugarman*, for defendant State Farm Mutual Automobile Insurance Company.

MELODY, *J.*, January 17, 1986—Plaintiff[1] brought this action seeking to recover basic-loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 to 1009.701 (No-fault Act), from defendants Insurance Company of North America (INA) and State Farm Mutual Automobile Insurance Company (State Farm).

By our order of December 11, 1984, we approved settlement of plaintiff's claim for no-fault benefits from State Farm. State Farm filed new matter in the nature of a cross-claim, contending that INA is jointly and severally liable for the payment of basic-loss benefits to plaintiff. Pursuant to 40 P.S.

------

[1]. The action was commenced by David Ruckel's natural guardian, Sharon Wengert. On May 5, 1983, a praecipe Re: Suggestion of Majority was filed indicating that David Ruckel reached the age of majority on August 29, 1982, and the caption was amended to remove the name of Sharon Wengert.

§1009.204(b), State Farm seeks contribution from INA in the amount of $74,613.70.

The parties filed a stipulation of facts and exhibits. The parties further agreed that the matter would be decided without trial, based on their pleadings, exhibits, briefs, and the stipulated facts.[2]

## STIPULATED FINDINGS OF FACT AND EXHIBITS

1. That on June 10, 1981, David Ruckel was a minor who was struck and injured by a motor vehicle operated by David T. Gibson.

2. On the day of this accident, there was, in full force and effect, no-fault insurance as that term is defined in section 103 of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S.§1009.101 et seq., between State Farm Mutual Automobile Insurance Company and Richard Wengert, a true and

---

2. We note the distinction between a "Non-Jury Decision" and "Judgment" entered on the basis of a "case stated" as set forth in Clearfield Bank v. American Manufacturers Mutual Insurance Company, 344 Pa. Super. 588, 497 A.2d 247 (1985). We have determined that this is a nonjury decision since it was necessary for us to render additional findings of fact because all of the facts were not agreed upon.

Further, the stipulation of facts and exhibits was prefaced with the following language:

"It is hereby stipulated and agreed by and between the State Farm Mutual Automobile Insurance Company and the Insurance Company of North America, by and through their attorneys, that the following stipulated facts are agreed upon and are to be considered by Your Honorable Court as if they had been testified to at trial; additionally, it is agreed that the following pleadings and/or exhibits are to be considered as part of the trial record in this matter as if the same had been formally introduced into evidence: . . . ."

correct copy of which has been made a part of the record, marked Exhibit M-2 and made a part hereof.

3. On the day of this accident, there was in full force and effect no-fault insurance as that term is defined in section 103 of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq., between the Insurance Company of North America and the County of Montgomery, said policy providing no-fault insurance coverage to the Montgomery County Office of Children and Youth Services (now the Montgomery County Office of Children and Youth). A true and correct copy of said policy of insurance has been made a part of the record, marked Exhibit M-3 and made a part hereof.

4. On March 31, 1980, prior to this accident, a consent decree and order was entered by the Court of Common Pleas of Montgomery County, Pa., Juvenile Court, with reference to David Ruckel. A true and correct copy of it has been made a part of the record, marked Exhibit S-1, and made a part hereof.[3]

---

3. This consent decree and order provided as follows:

"ORDER

"And now, this 31st day of March, 1980 upon the motion of Gwanita Hester, attorney at law with the dissent of the district attorney's office represented by Stephen O'Neill, the court finds the above subject has voluntarily, intelligently and knowingly agreed to a consent decree being entered on his/her behalf in accordance with section 8.1 of the Juvenile Court Act of 1972, as amended by Act 41, August 3, 1977; the court further orders these conditions as recommended by the Juvenile Probation Department be enforced as to this Decree.

1. This Decree shall remain in force for 12 months unless the child is discharged sooner by the Juvenile Court.

3. Individual and Family Counseling.

4. Court costs $50.

5. Psychiatric $75.

5. On April 16, 1980, an order of the Court of Common Pleas of Montgomery County, Pa., Juvenile Court was entered with respect to David Ruckel. A true and correct copy of it has been made a part of the record, marked Exhibit S-2, and made a part hereof.[4]

6. On or about January of 1981, David Ruckel was placed by the Denbigh Group Home into the care of a foster parent, Sharon Wengert, and her husband, Richard Wengert, in Exton, Pa.

7. On March 3, 1981, the Court of Common Pleas of Montgomery County, Pa., Juvenile Court, entered an order with reference to David Ruckel, a true and correct copy of which has been made a part of the record, marked Exhibit S-3, and made a part hereof.[5]

---

6. Investigate alternative schooling — Montco Community Day Center.

7. Denbeigh [sic] House or other Shelter care."

4. This order of commitment provided as follows:

"ORDER OF COMMITMENT

"After hearing, the above suject (sic) is hereby adjudicated delinquent/dependent and is committed to:

Denbigh Group Home. _____

under the supervision of the Chief Juvenile Probation Officer and his assistants. The County of Montgomery to pay maintenance. the Parent(s) to reimburse the County in the amount of $75 per week in partial reimbursement of the maintenance expense.

Subject to further order of this court."

5. This general order provided as follows:

"GENERAL ORDER

"It is ordered that David Ruckel continue to live with the Wengerts, under the supervision of Children & Youth Services, and be released from his Consent Decree.

Costs $50.

8. On April 2, 1981, the Court of Common Pleas of Montgomery County, Pa., Juvenile Court, entered an order with reference to David Ruckel, a true and correct copy of which has been made a part of the record, marked Exhibit S-8, and made a part hereof.[6]

9. On or about April 15, 1981, the Montgomery County Children and Youth Services Offices requested the Honorable Lawrence B. Brown of the Montgomery County Court to give custody of David Ruckel to the Montgomery County Children and Youth Services Office. A true and correct copy of this request has been made a part of the record, marked Exhibit S-5 and made a part hereof.

10 An order of the Montgomery County Court of Common Pleas, Juvenile Court was entered on May 7, 1981 with reference to David Ruckel. A true and correct copy of said order had been made a part of the record, marked Exhibit S-6 and made a part hereof.[7]

---

Subject to further order of this court.
Parental reimbursement —
Father to pay $75 per wk."

6. This General order provided as follows:

### "GENERAL ORDER

"It is ordered that payment be ceased by the Juvenile Probation Department & payment to be started by Children & Youth Services for foster placement for David Ruckel effective 3-31-81.

Subject to further order of this court."

7. This custody order provided as follows:.

### "CUSTODY ORDER

"Temporary custody of the above subject is granted and awarded to the Montgomery County Office of Children and Youth.

This order is based on a previous order of 3-3-81 giving Children & Youth Services supervision of David Ruckel."

11. At the time of the accident, Richard Wengert was a named insured in a policy of insurance issued by the State Farm Mutual Automobile Insurance Company, and said policy provided security to David Ruckel in accordance with the No-fault Act.

12. On or about June 7, 1982, David Ruckel filed suit against INA and State Farm for basic-loss benefits under the No-fault Act as a result of the injuries sustained in the accident of June 10, 1981.

13. The State Farm Mutual Automobile Insurance Company settled David Ruckel's claim for no-fault benefits, said settlement being approved by the Honorable M. Joseph Melody by order dated December 11, 1984, a copy of which has been made a part of the record, marked Exhibit M-1 and made a part hereof.

14. Pursuant to the said approved settlement and payments made by State Farm to David Ruckel prior to said settlement, State Farm has paid to David Ruckel the total of $149,227.39 in basic-loss benefits as a result of the injuries sustained in the accident of June 10, 1981.

15. In addition to the above-stipulated facts, the parties hereto, through their attorneys agreed [sic] to the following items being introduced into evidence:

(a) Transcript of the oral deposition of James R. Ruckel taken in Paoli, Pennsylvania, on Monday, June 20, 1983;

(b) Transcript of the oral deposition of William Schlachter taken in Paoli, Pennsylvania, on Wednesday, September 19, 1984;

(c) Transcript of the oral deposition of Dolores Ragusa taken in Paoli, Pennsylvania, on Wednesday, September 19, 1984;

(d) All pleadings;

(e) All requests for admissions and answers thereto;

(f) All exhibits referred to in the transcripts of the oral depositions of Dolores Ragusa and William Schlachter as well as all exhibits referred to in the. stipulated facts, an itemization of which exhibits follows 'hereinafter;

(g) The foster parent guidelines (in effect 6/10/81).

The exhibits referred to in paragraph 15(f) above are as follows:

1. State Farm Mutual Automobile Insurance Policy with Richard Wengert — Exhibit M-2.

2. INA insurance policy with Montgomery County — Exhibit M-3.

3. Court Order of March 31, 1980 — Exhibit S-1.

4. Court Order of April 16, 1980 — Exhibit S-2.

5. Court Ordrer of March 3, 1981 — Exhibit S-3.

6. Court Order of April 2, 1981 — Exhibit S-8.

7. Request of Montgomery County Children and Youth Services to the Honorable Lawrence Brown dated 4/15/81 — Exhibit S-5.

8. Court Order of May 7, 1981 — Exhibit S-6.

9. Court Order of December 11, 1984 — Exhibit M-1.

10. Foster Parents Manual (Foster Parent Guidelines) — Exhibit M-4.

11. Placement Data Collection — Exhibit S-4.

12. Family Contact Card — (two pages) — Exhibit S-7.

13. Court Order of February 24, 1982 — Exhibit S-9.

14. Correspondence from William Schlachter to David G. Blake, Esq., dated May 14, 1984 — Exhibit S-10.

15. Contact record sheets (five pages) — Exhibit R-1.

16. Two-page report from Dolores Ragusa to William Rubel dated September 9, 1981 — Exhibit R-2.

## ADDITIONAL FINDINGS OF FACT[8]

16. On the day of the accident, David Ruckel was in residence in the same household as the County of Montgomery through its agency, the Montgomery County Office of Children and Youth (MCCYS), and its agents, his foster parents, by the agreement between MCCYS and Richard and Sharon Wengert.

17. On the day of the accident, David Ruckel was in the joint custody of both the County of Montgomery through its agency, the Montgomery County Office of Children and Youth (MCCYS), and its agents, his foster parents, Richard and Sharon Wengert.

## DISCUSSION

The issue for resolution is whether David Ruckel qualifies as an "insured" under the INA policy issued to the County of Montgomery. "Insured" is defined by section 103 of the No-fault Act, 40 P.S. §1009.103, as inter alia:

"(B) A spouse or other relative of a named insured, *a minor in the custody of a named insured,* and a minor in the custody of a relative of a named insured if —

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) *in residence in the same household with a named insured.*" (Emphasis supplied.) Section 103 further provides that: "An individual is in residence

---

8. As determined by us.

in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere."

It is clear that David Ruckel was in the joint custody of both the County of Montgomery, through its agency, the Montgomery County Office of Children and Youth, and the Wengerts, its agents.

In addition, David Ruckel satisfies the criteria of subsections (i) and (ii) as set forth in section 103(B) above. First, he is "not identified by name as an insured in any other contract of basic restoration insurance complying with [the No-fault] Act." Second, David Ruckel was "in residence in the same household with a named insured." He was living with the Wengerts who were acting as agents for MCCYS, an agency of the County of Montgomery. Since he was clearly in residence in the same household as the Wengerts, who were agents for MCCYS, an agency of the County of Montgomery, he was in residence in the same household as the County of Montgomery. David Ruckel qualifies as an "insured" under the INA policy issued to the County of Montgomery.

Although in this case the Wengerts' insurance covered the damages sustained by this youth, we can envision situations where the foster parents' own insurance coverage would not cover damages sustained by a youth. Thus, if the youth's coverage was limited to the coverage of the foster parents, despite the fact that the youth was actually in the joint custody of the Children & Youth Services and the foster parents, an unreasonable result not intended by our legislature would ensue.

The purposes of the No-fault Act are found at 40 P.S. §1009.102(b) which provides in full:

"(b) PURPOSES. — Therefore, it is hereby declared to be the policy of the General Assembly to

establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic-loss benefits for motor vehicle accident victims and the survivors of deceased victims."

It would be unconscionable to permit a government agency (county) to take control of the person of a youth and at the same time impose upon such youth insurance coverage limited to that of that particular foster parent. Such a "luck of the draw" approach would be the effect of following the INA theory.

State Farm relies heavily upon the Bucks County case of Baigis v. Harleysville Mutual Insurance Company, 15 D.&C.3d 317 (1980), to buttress its position. We find certain aspects of Baigis to be on point, and apply those to the instant case.

## CONCLUSIONS OF LAW

1. David Ruckel is an insured of INA in accordance with section 103 of the No-fault Act.

2. INA is jointly and severally liable with State Farm for the payment of basic-loss benefits to David Ruckel.

3. State Farm has satisfied and discharged its obligations to David Ruckel by payment of basic-loss benefits in the amount of $149,227.39.

4. INA is liable to State Farm for contribution of its pro rata share of basic-loss benefits in the amount of $74,613.70 pursuant to section 204(b) of the No-fault Act.

## DECISION

And now, this January 17, 1986, after a trial without a jury, it is adjudicated as follows:

1. The claim is an action based on the No-fault Act to recover contribution.

2. State Farm has proved by a fair preponderance of the evidence its right to recover damages from INA.

3. INA is liable to State Farm.

4. Verdict in favor of State Farm and against INA in the amount of $74,613.70

5. The Prothonotary of Chester County shall enter this decision and forthwith give written notice thereof to all parties and their attorneys of record of the date of filing.